### MASON *et al.* v. HINDS.

*(Superior Court of Buffalo, General Term. August 3, 1892.)*

**1. REAL-ESTATE AGENTS—COMMISSIONS—REFUSAL OF PRINCIPAL TO PERFORM.**
> A real-estate agent is entitled to commissions for effecting the execution of a contract to exchange lands, notwithstanding his principal's refusal to perform the same on the ground that the land had been conveyed to the proposed grantor in fraud of creditors, where such grantor had an absolute title, and no effort had been made by creditors to impeach the conveyance.

**2. PARTNERSHIP—COMPETENCY OF PARTNER'S TESTIMONY AS TO EXISTENCE.**
> In an action by a partnership a partner is a competent witness as to the existence of the relation.

**3. WITNESS—CROSS-EXAMINATION—REPETITION OF QUESTIONS.**
> The court may, in its discretion, refuse to permit a witness to be asked on cross-examination questions substantially the same as others previously propounded and answered.

**4. REAL-ESTATE AGENTS—COMMISSIONS—MISREPRESENTATIONS.**
> It is immaterial to a real-estate agent's right to commissions for effecting the execution of a contract for the exchange of lands that he misrepresented the amount of taxes in arrear on the land to be received by his principal, where the latter had the tax bills before him, and could have informed himself as to their amount.

**5. SAME—INABILITY TO PERFORM.**
> In an action for commissions for effecting the execution of a contract to exchange lands, defendant's ability to pay the taxes in arrear on the land to be received by him was immaterial to the question whether he had agreed to do so, and evidence thereof was inadmissible.

Appeal from municipal court.

Action by Walter C. Mason and another against Freeman A. Hinds. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before TITUS, C. J., and WHITE and HATCH, JJ.

*J. W. Russell*, for appellant. *Andrews & Hill*, for respondents.

TITUS, C. J. This is an appeal from the municipal court of Buffalo from a judgment rendered in favor of the plaintiffs for $146.66 damages and $19.30 costs. The action was brought by the plaintiffs to recover

commissions which they claim to have earned in procuring a purchaser for the defendant's farm of 105 acres, situated in the town of Cameron, in the county of Steuben. The plaintiffs are real-estate brokers, engaged in procuring parties to buy and sell lands, and charging a commission for their services. It is claimed by the plaintiffs, and not disputed by the defendant, that they did enter into an agreement, by which, if the plaintiffs procured a purchaser for the farm, the defendant would pay them for their services. It appears from the evidence that the plaintiffs were to receive $150 if they procured a purchaser for the defendant's farm. The defendant claims, however, that he was to pay them only $100. This question was tried before the court below, and on disputed evidence the court determined that the version of the contract as alleged by the plaintiffs was the true one, and allowed them a judgment for that sum. We think the evidence fully warranted the court in the conclusion which it reached, and are not disposed to disturb its finding upon that ground.

It appears that Charles Roesch was the owner of three certain pieces of property, situated in Buffalo, and that through the negotiation of the plaintiffs he entered into a contract with the defendant to exchange this property for the defendant's farm, Roesch agreeing to take the farm in exchange for the lots in Buffalo, and give back a mortgage for $2,700, and the defendant was to pay Roesch $400 in cash, leaving the actual difference between the two properties $2,300. A written contract was entered into and signed on the 19th day of December, 1891. The defendant afterwards refused to fulfill his part of the contract, and now claims that he should not be held liable for the commissions, because the sale did not actually take place. On the trial the defendant sought to show that the plaintiffs made false representations as to the amount of taxes due on the pieces of property owned by Roesch. We do not think he satisfactorily established any fraud, and that the amount of taxes, as stated by Mr. Gerst, who was the agent of Roesch, to the plaintiffs, was true.

It is claimed, however, by the defendant that he should not pay plaintiffs their commissions, because the title to the property, while it was in Charles Roesch, was actually owned by Louis Roesch, and that Louis Roesch had creditors who might have a lien or claim against the property in the hands of Charles Roesch, and that he cannot be made to perform his contract with Roesch. We do not think his objection is a valid one. So far as it appears, the title to the property in Roesch was absolute and perfect. No creditor had made claim to it, or sought to charge it with any of the debts of Louis Roesch, and there could be no legal objection to Charles Roesch conveying the title to a *bona fide* purchaser, which would be perfect and free from the claims of the creditors of Louis Roesch. It is claimed, however, by the counsel for the defendant that this contract is illegal upon its face, and cannot be enforced. He does not point out specifically the particular reasons for such claim, and it is not apparent from the contract, or from the return itself, wherein the contract is open to that objection.

During the trial the defendant made numerous objections to the admission of evidence, and claims that error was committed by the court in overruling them. The first objection pointed out is to the proof made by one of the plaintiffs as a witness that he and Mason were partners in business. We do not think the objection is well taken. Since parties are allowed to testify in their own behalf, we can see no objection to proving the fact of a partnership by one of the copartners, although he is a party to the action. The authorities cited by the defendant's counsel in support of his proposition have application to cases where it is sought to establish a partnership in actions brought by third parties against the copartners. It is always competent to show the acts of the copartners in their manner of dealing between themselves and with third parties, as well as their declarations, to establish the fact of a part-

nership. But it does not follow that in an action by the copartners they are not permitted to testify to the fact themselves.

The next ruling which the defendant's counsel claims is erroneous was in the cross-examination of the plaintiff Banks. He was asked: "*Question.* Was anything said in regard if the trade didn't go through, if the property didn't actually exchange hands?" This was objected to, and the evidence excluded. The ground of the objection is not stated, but it is manifest on an examination of his cross-examination that the court exercised its discretion properly. It appears that the defendant's counsel had repeatedly asked substantially the same question, and that it had been as frequently answered by the witness. The question immediately preceding this one was: "*Question.* I ask the witness if at any time you stated to the plaintiff Banks you wouldn't pay this commission under any circumstances, unless the trade was carried through and this property actually exchanged?" The witness answered: "I told him that if the trade went through I would give him one hundred dollars." On page 30 this question was asked of the witness: "*Question.* Was anything said as to whether it should be paid at all or not if the trade didn't go through?" The witness answered: "That was distinctly understood, if the trade was made." And again, on the same page, this question was asked: "*Question.* Was anything said between you and Banks as to whether this money should or should not be paid unless the trade actually went through?" And the witness answered: "I told Banks that I would agree to give him one hundred dollars in cash if the trade was made." On page 31 the same witness was asked: "*Question.* Tell whether or not it was positively stated by you to Banks that you wouldn't pay the commissions unless the trade actually went through. You may tell what that conversation was;" and the witness answered: "If the trade was made I was to give him one hundred dollars." Again, on the same page: "*Question.* What was said? *Answer.* I told him if the trade went through I would give him one hundred dollars." On page 32 this question was asked of the same witness: "*Question.* I now ask if you remember anything being said in that conversation about the manner of your paying this commission; anything further than you have stated?" and the witness answered: "It was said from me to him if the trade was made I was to give him one hundred dollars." Again, on page 33: "*Question.* Was anything further said about this payment of one hundred dollars than as you have stated? *Answer.* I told him if the trade was made I would give him one hundred dollars." On the same page the following question was asked: "*Question.* Do you remember anything further upon the subject of paying this one hundred dollars commission? *Answer.* I don't know anything further in regard to paying commissions that I know of." It would seem that after the counsel has been permitted to ask six or seven times a question which is practically identical with the one which was ruled out, and as frequently answered, that he can have no ground for complaining that he was not permitted to examine the witness upon this point. We think he exhausted his full right, and the court below was liberal in allowing him to repeat the question so many times.

The defendant claims he should have been permitted to ask the following question: "*Question.* You may state whether or not, shortly after the signing of this contract, you saw the plaintiff Banks in my office on this subject, and if you did, whether or not you said to him there that he had stated to you before you signed this contract that there was nothing due upon the taxes or interest; that he knew at the time that he so stated to you that the taxes were due, and that the interest on the mortgage, or some part of the mortgages, was due." If any error was committed by the ruling of the court in ruling out the question, it was cured by the witness subsequently answering the same question. But we do not think error was committed in any view. The tax bills were before the defendant at the time negotiations

were pending for the exchange of the lands, and he examined or had an opportunity to examine them, and determine for himself whether or not the taxes were due. This was in December, 1891. The taxes to which the question related were the city taxes of 1890 and 1891, which appeared from the tax bills themselves to have been long past due, and as to the local taxes the defendant was bound to take notice of the law in relation to the time when such taxes fell due. We do not think any error was committed by the court. The defendant was asked by his counsel whether he was in condition at the time to pay those taxes besides the $400 that the contract called for. We think this was clearly incompetent. The question as to his condition to pay taxes was entirely immaterial. If he had entered into the contract it was a matter of no concern, either to Roesch or the plaintiffs, whether he was in condition to pay the amount of the taxes or not. Nor do we think that any error was committed by the court in ruling out the offer of the defendant to show that the title to the property was in Charles Roesch, and that Louis Roesch had paid the consideration. We think it is immaterial, and does not constitute a defense to the plaintiffs' claim for commissions. On an examination of the return we do not see that any error was committed which calls upon this court to interfere with the judgment. Section 3063 of the Code of Civil Procedure provides that in appeals of this character "the appellate court must render judgment according to the justice of the case, without regard to technical errors or defects which do not affect the merits," and it is difficult to see how any of the questions which were ruled out are important or material as bearing upon the merits of the case. The judgment should therefore be affirmed, with costs. All concur.